**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SANDRA L. STONEMARK,**

      **Plaintiff,**

**vs.**                                          **Case No.: 8:14-CV-556-T-24EAJ**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,[1]**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends affirming the Commissioner's decision and dismissing the case.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence

_____

[1]  The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2]  The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On October 8, 2010, Plaintiff filed an application for DIB, alleging disability beginning October 7, 2010. (T 11)  Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on April 12, 2012. (<u>Id.</u>)  Sixty-three (63) years old at the time of the hearing, Plaintiff has a bachelor's degree and past relevant clerical work experience, as well as past relevant work experience in retail sales and as a property appraiser.  (T 18, 28)

On May 18, 2012, an ALJ denied Plaintiff's application.  (T 11-19)   Although Plaintiff's severe impairments included a remote history of fractured L2 and pelvis, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1.  (T 13-14)  Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for light work with the following limitations: Plaintiff can lift and/or carry twenty (20) pounds occasionally and ten (10) pounds frequently, stand and/or walk about six (6) hours each out

2

of eight (8) hours, and sit about six (6) hours out of eight (8) hours.  Plaintiff has unlimited ability to push or pull that is consistent with light work, is limited to occasionally stooping and climbing ladders, ropes, and scaffolds, and has no manipulative or visual limitations, but should avoid concentrated exposure to work hazards such as unprotected heights and dangerous machinery. (T 14)

The ALJ found that Plaintiff was able to perform her past relevant work. (T 18) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (T 19) On January 3, 2014, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (T 1-5)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff contends the ALJ erred by: (1) failing to properly weigh the medical evidence and (2) failing to properly evaluate Plaintiff's credibility.

**A.**     Plaintiff contends that the ALJ improperly weighed the medical evidence, including the opinions of Marc Reiskind, M.D. ("Dr. Reiskind," Plaintiff's treating physician), Robin R. Hughes, M.D., M.P.H. ("Dr. Hughes," an examining physician), and Mary Seay, M.D. ("Dr. Seay," a state agency medical consultant).

When reviewing the Plaintiff's record, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted).  Specifically, whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments,

3

including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject the opinion. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Ultimately, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations and internal quotation marks omitted). Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Phillips v. Barnhart, 357 F.3d at 1241.

Dr. Reiskind, Plaintiff's treating physician,[3] opined that Plaintiff could lift or carry up to five (5) pounds frequently and ten (10) pounds occasionally, but she could never lift more than ten (10) pounds. Using her fingers or hands for fine manipulations Plaintiff had minimal limitations, but she had marked limitations using her arms for reaching. Plaintiff needed to avoid heights and could not push, pull, kneel, bend, or stoop. Further, Plaintiff's pain and other symptoms would frequently interfere with her attention and concentration, she would require unscheduled breaks of two hours

---

[3] The administrative record contains medical records for Plaintiff from Dr. Reiskind dated between July 8, 2010, and February 28, 2013. (T 260-98, 312-20)

each, she would miss work more than three times per month, and she was capable of tolerating low work stress.  Additionally, her prognosis was limited and she was unable to maintain normal competitive employment.[4] (T 17, 285, 288-91)

Similarly, Dr. Hughes, who saw Plaintiff on one occasion for an independent medical evaluation, opined that Plaintiff could occasionally lift or carry up to ten (10) pounds, but never more than ten (10) pounds; could sit for three (3) to four (4) hours in an eight-hour day; and could stand or walk for one (1) to two (2) hours per day.  Plaintiff had minimal limitations for grasping, turning, or twisting objects, but marked limitations for reaching with her arms, and could tolerate low to moderate work stress.  Plaintiff was likely to miss work more than three (3) times per month; should avoid pushing, pulling, kneeling, bending, or stooping; and was unable to perform full time competitive work due to her disabilities (T 18, 299-311)[5]

The ALJ gave little weight to the opinions of both Dr. Reiskind and Dr. Hughes.  The ALJ found Dr. Reiskind's opinion unsupported by the medical record and inconsistent with other reliable

---

[4] Although not mentioned by the ALJ, Dr. Reiskind also opined that Plaintiff could sit for only four (4) hours and stand or walk for only two (2) hours in an eight-hour day and required the ability to get up and move for about ten (10) minutes every half hour.  Plaintiff's pain was a six (6) and her fatigue was a seven (7) on a scale of ten (10).  Plaintiff also had pain in her back when reaching, and Dr. Reiskind recommended Plaintiff should not sit continuously or stand or walk continuously in a work setting. (T 287-88)  Additionally, Plaintiff's symptoms were likely to increase if placed in a competitive work environment. (T 289)

[5] Although not discussed by the ALJ, Dr. Hughes also opined, among other things, that Plaintiff had constant pain (precipitated by bending, lifting, and prolonged sitting or standing), her pain was a six (6) or seven (7) on a scale of ten (10), her fatigue was a seven (7) or eight (8) on a scale of ten (10).  Plaintiff should avoid reaching and should not sit continuously or stand or walk continuously in a work setting, and Plaintiff's symptoms would frequently to constantly affect her attention and concentration. (T 305-309)  Further, Plaintiff would need to take unscheduled breaks of thirty (30) to forty-five (45) minutes at unpredictable intervals during the work day, her symptoms were likely to increase if placed in a competitive work environment, and her prognosis was poor for any further improvement. (T 303, 307-08)

evidence and found Dr. Hughes' opinion inconsistent with the record as a whole and Plaintiff's RFC. (T 17-18)

The ALJ credited Dr. Reiskind's opinion that Plaintiff should avoid heights, but found the limitations regarding Plaintiff's ability to lift or carry and her likelihood of missing work unsupported. Further, the ALJ found Plaintiff had no impairment to her hands which would impact fine or gross manipulation. The ALJ also found Dr. Reiskind's opinion that Plaintiff could tolerate only low work stress was vague and without support in the evidence. The ALJ explained that Dr. Reiskind was not a mental health source and that there was no evidence Plaintiff had a mental impairment. (T 17) As for Dr. Hughes' opinion, the ALJ noted that Dr. Hughes was a one-time examiner who based his opinion almost entirely on Plaintiff's subjective reports. (T 18) The ALJ also rejected the opinions of Dr. Reiskind and Dr. Hughes that Plaintiff would be unable to maintain full-time competitive employment due to her disabilities, as the determination about whether a claimant is disabled is reserved for the Commissioner. (T 17, 290, 294, 301)

Plaintiff contends the ALJ erred by rejecting the opinions of Dr. Reiskind and Dr. Hughes, asserting that they were supported by diagnostic findings including a DEXA hip and spine scan showing degenerative changes and hardware present in the lumbar spine. (T 299) She points to evidence of multiple fractures, decreased lumbar range of motion, and decreased sensation and weakness of her lower extremities. (T 215, 261-62, 264-65, 267-68, 285, 296)

Contrary to Plaintiff's assertion that the ALJ did not question this evidence or identify evidence contradicting Dr. Reiskind's opinions, the ALJ specifically acknowledged that physical examinations by Dr. Reiskind showed diminished sensation and strength, but a normal gait, Plaintiff

was under a therapeutic drug monitor,[6] taking Oxycodone only as needed, and her physical examinations were overall unremarkable.[7] The ALJ also noted that Dr. Reiskind's treatment notes consistently showed Plaintiff's pain was controlled with medications[8] and that Plaintiff's treatment was conservative, primarily for medication management. (T 14, 17, 198-203, 205-16, 219-29, 261-75, 295-96)  An ALJ may consider conservative medical treatment in assessing a claimant's disability, especially where, as here, Plaintiff's conservative treatment was only one of multiple considerations. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (affirming the ALJ's decision to discredit the claimant's testimony based in part on the conservative nature of treatment for spinal, heart, and thyroid conditions).

Plaintiff also challenges the ALJ's comment that Dr. Hughes' opinion was based primarily on Plaintiff's complaints, pointing again to the DEXA hip and spine scan and explaining that Dr. Hughes' examination revealed palpable spasm to the lumbar spine; tenderness along the mid-lumbar spine from L2 to L5; pain over the posterior sacrum, left sacroiliac joint, and left sciatic notch; and limited range of motion in the lumbar spine.  The examination also revealed Plaintiff had restriction and pain with left external rotation; tenderness in and about the left hip and joint bursa; positive

---

[6] "Therapeutic drug monitoring" means "lab tests to look for the presence and the amount of a drug in the blood." Nat'l Insts. of Health, Therapeutic Drug Levels, MedlinePlus (last updated Apr. 29, 2013), http://www.nlm.nih.gov/medlineplus/ency/article/003430.htm.

[7] Although not specifically noted by the ALJ, the records showing Plaintiff had a normal gait also demonstrated that Plaintiff had normal coordination, upper and lower extremity joints, cervical spines, and L-S spines. (T 199, 201, 203, 206, 207, 209, 211, 213, 215, 220, 222, 224, 227, 228, 234, 262, 265, 268, 270, 273, 275, 296)

[8] Plaintiff contests this characterization of the medical records, explaining she was on heavy doses of narcotics and still rated her pain a six (6) out of ten (10).  Yet, many of the same medical records state "[t]he medications are[] controlling the pain well," or "pain relief yes, improved with current therapy." (T 198, 200, 202, 205, 207, 209, 211, 213, 215, 219, 221, 223, 226, 228, 261, 264, 267, 269, 272, 274, 295)

Kemp's test; weakness of the left side (grade 4/5); altered sensation over the lower extremities (most noted to the left medial calf); atrophy of the left calf as compared to the right; and an altered antalgic gate. (T 300)

It is clear the ALJ considered Dr. Hughes' findings on physical examination. The ALJ recognized that the examination showed an antalgic gait, tenderness in the hip and spine, and decreased range of motion. (T 14) However, the ALJ explained that the examination was otherwise unremarkable. (T 14) The ALJ also explained that Dr. Hughes' opinion was not supported by the objective medical evidence, including Plaintiff's treatment records. (T 14, 18) The ALJ also noted that the restrictions imposed by Dr. Reiskind and Dr. Hughes were not found in the treatment notes, and Plaintiff's own reported activities, as described below, did not support their opinions. (T 17-18)[9]

Citing Brownawell v. Astrue, 554 F.3d 352, 356 (3d Cir. 2008), Leckenby v. Astrue, 487 F.3d 626, 633 n.7 (8th Cir. 2007), and Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007), Plaintiff argues that it was improper for the ALJ to discount the opinions of Dr. Reiskind and Dr. Hughes because Dr. Reiskind did not include specific functional limitations in Plaintiff's treatment records, as treatment records are kept not for the purpose of litigation, but for the purpose of treatment. But an ALJ may reject the opinion of an examining physician when the physician's opinion is inconsistent with his own medical records, Phillips, 357 F.3d at 1240-41, including when a physician's records do not contain any limitation. See Crow v. Comm'r Soc. Sec. Admin., 571 F.

_____

[9] Explaining she did not have an impairment of her hands, Plaintiff also contends the ALJ erred by finding Plaintiff's limitations regarding her ability to lift or carry unsupported. However, the ALJ's finding regarding Plaintiff's ability to lift or carry was not based on Plaintiff's ability to use her hands. The ALJ, instead, made two distinct findings about different parts of Dr. Reiskind's opinion: The ALJ stated that Dr. Reiskind's "opinions regarding [Plaintiff's] ability to lift and/or carry are unsupported." (T 17) In the next sentence, the ALJ stated, "Further, [Plaintiff] has no impairment to her hands which would impact fine or gross manipulation." (Id.)

App'x 802, 806-07 (11th Cir. 2014) (per curiam) (unpublished) (finding the ALJ did not err in weighing the medical evidence where "[n]one of the limitations [the claimant's] treating physician noted in the medical source information form were included in any of his previous treatment notes," the treatment notes demonstrated the claimant's positive response to medication and a return to strength, and the claimant's activities of daily living indicated he was not as limited as the physician alleged).[10]   Moreover, the ALJ's consideration of a lack of functional limitations in Plaintiff's treatment records is only one of multiple reasons cited by the ALJ for rejecting the opinions of Drs. Reiskind and Hughes. See id.

Plaintiff also contends that, even if the ALJ did not give Dr. Reiskind's opinion controlling weight, the ALJ should have considered the following factors, pursuant to SSR 96-2p: Dr. Reiskind treated Plaintiff regularly during the period at issue; Dr. Reiskind's treatment focused on Plaintiff's chronic pain and limitations, which were the subject of his opinions; the support provided by Dr. Reiskind for his opinions; the consistency of Dr. Reiskind's findings with Plaintiff's treatment records documenting weakness and altered sensations; and Dr. Reiskind's board-certification in physical medicine and rehabilitation.[11]

If a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless evaluate the opinion based on: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical

---

[10]   While not binding precedent, unpublished opinions of the Eleventh Circuit Court of Appeals may be cited as persuasive authority. 11th Cir. R. 36-2.

[11]   Social Security Rulings do not have "the force and effect of the law" in this circuit and are not binding. Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished) (citation and internal quotation marks omitted).

evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the relevant medical issues; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Here, contrary to Plaintiff's assertion, the ALJ did consider these factors in evaluating Dr. Reiskind's opinion.  The ALJ acknowledged Dr. Reiskind was Plaintiff's treating physician, but found that the opinion was not supported by the objective medical evidence and was inconsistent with other reliable evidence, as explained above. (T 17-18)

Plaintiff further argues that the ALJ erred by assigning significant weight to the opinion of Dr. Seay, a non-treating, non-examining physician.  However, the ALJ is entitled to rely on a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings, Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished), as is the case here.

Dr. Seay opined that Plaintiff could lift or carry twenty (20) pounds occasionally and lift or carry ten (10) pounds frequently, could stand or walk for a total of about six (6) hours in an eight (8) hour workday, could sit for a total of about six (6) hours in an eight (8) hour workday, and had no limitations for pushing or pulling.  Plaintiff could frequently climb ramps or stairs, balance, kneel, crouch, and crawl, and could occasionally stoop and climb ladders, ropes, or scaffolds.  Dr. Seay also opined Plaintiff should avoid concentrated exposure to hazards such as machinery and heights. (T 17, 253-56)

Plaintiff points out that Dr. Seay is a pediatrician who reviewed a limited portion of Plaintiff's file sixteen (16) months prior to the ALJ's decision.  But Dr. Seay's opinion is not inconsistent with the record.  Dr. Seay in fact cited two treatment notes and the DEXA scan (which

Plaintiff relies on to support the opinions of Dr. Reiskind and Dr. Hughes) in support of her conclusions regarding Plaintiff's exertional limitations. (T 253)  The RFC assessment form required Dr. Seay to cite the facts upon which her conclusions were based; Dr. Seay was not required to cite every medical record she reviewed.  Further, the ALJ found Dr. Seay's opinion consistent with the record as a whole, as well as with Plaintiff's RFC, and explained that the treatment notes did not conflict with Dr. Seay's opinion. (T 17)

The ALJ properly evaluated Dr. Hughes opinion as a one-time examiner.  And the ALJ articulated good cause to reject the opinions of Dr. Reiskind and Dr. Hughes.  Further, the ALJ properly found Dr. Seay's opinion was supported by the record and did not conflict with the underlying clinical findings of Drs. Reiskind and Hughes.  The ALJ's decision to give little weight to the opinions of Drs. Reiskind and Hughes and give substantial weight to the opinion of Dr. Seay is supported by substantial evidence.  "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).  Plaintiff is not entitled to remand on this issue.

**B.**     Plaintiff also contends that the ALJ failed to properly evaluate Plaintiff's credibility.

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).  If the ALJ does not credit a claimant's

testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." <u>Foote v. Chater</u>, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding that is substantially supported by the record will not be overturned. <u>Id.</u> at 1562 (citation omitted).

To satisfy the first of the pain standard elements, Plaintiff is required to show objective medical evidence of an underlying medical condition. <u>Landry</u>, 782 F.2d at 1553. In making the credibility determination, the ALJ found that Plaintiff suffered from a severe impairment, remote history of fractured L2 and pelvis. (T 13)  However, the ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements about the persistence, intensity, and limiting effects of the alleged symptoms were not credible to the extent they conflicted with an RFC for light work with the limitations provided above. (T 14, 16)  In support of this finding, the ALJ pointed to Plaintiff's receipt of unemployment benefits, conservative treatment, work history between 2004 and 2010, lack of evidence that Plaintiff's condition deteriorated at the time alleged, inconsistencies between Plaintiff's assertions and the medical record, and Plaintiff's activities of daily living. (T 16-17)

Emphasizing objective findings such as the DEXA scan, a clinical examination, and Plaintiff's inability to control her pain even with the use of heavy narcotics, Plaintiff contends the ALJ's credibility finding is not supported by substantial evidence. (287, 299-300, 307) Plaintiff also cites her history of multiple surgeries, including spinal surgery, for fractures.

However, the ALJ explained that the evidence showing treatment and laboratory testing for an L2 fracture and pelvic fracture occurring in 2004 were remote in time and offered little probative value; the ALJ also noted a gap in treatment notes between 2004 and 2008. (T 13, 179-94, 213-14)

The ALJ explained that Plaintiff reported spinal surgery in 2005 and a spinal cord implant in 2006, was diagnosed with radicular syndrome of the lower limbs and trauma, and had diminished sensation and strength, but her treatment was conservative and physical examinations were generally unremarkable, including a normal gait and pain controlled by medication. (T 13-14, 18, 198-203, 205-16, 219-29, 261-75, 295-96, 299)  Although Plaintiff stated that she required the use of a cane to ambulate, the ALJ found the Plaintiff's treatment records did not indicate that she required an assistive device. (T 16, 133)

Plaintiff challenges the ALJ's finding about her pain medication, asserting that, even with heavy medication, she rated her pain a six (6) out of ten (10).  But the ALJ noted that Plaintiff was under a therapeutic drug monitor and took Oxycodone only as needed; and the treatment records cited by the ALJ document Dr. Reiskind's assessment that Plaintiff's pain was controlled with medication. (T 14, 18, 33, 198, 200, 202, 205, 207, 209, 211, 213, 215, 219, 221, 223, 226, 228, 261, 264, 267, 269, 272, 274, 287, 295)[12]

Plaintiff also asserts that she suffers from side effects resulting from her use of heavy narcotics.  But Plaintiff had taken the same medications, Fentanyl and Oxycodone, since 2004, including the time period that she was working. (T 17, 29-33, 112)  The ALJ also explained that the record "rarely, if ever, show[s] complaints of confusion or difficulties concentrating." (T 17)  Although Plaintiff contends her side effects were documented by the record, she cites only the opinions of Dr. Reiskind and Dr. Hughes; Plaintiff does not identify any treatment notes

---

[12]  The ALJ stated that Plaintiff's pain was controlled by medication (T 14, 18).  In support of this finding, the ALJ broadly cited exhibits in Plaintiff's record; the record cites above are within the exhibits cited by the ALJ and show Plaintiff's medications were "controlling the pain well," or that Plaintiff's pain was "improved with current therapy."

13

documenting her complaints of confusion or inability to concentrate. (T 287, 300, 307) <u>See, e.g.,</u> <u>Gantea v. Comm'r of Soc. Sec.</u>, No. 09-15704, 2010 WL 2179517, at *1 (11th Cir. June 2, 2010) (per curiam) (unpublished) (finding ALJ was entitled to discredit claimant's complaints of side effects because physicians who prescribed claimant's medications did not state that claimant was functionally limited by side effects); <u>Turner v. Comm'r of Soc. Sec.</u>, 182 F. App'x 946, 949 (11th Cir. 2006) (per curiam) (unpublished) (finding ALJ properly discredited claimant's testimony regarding medication side effects based on lack of evidence that claimant "consistently complained" to her physicians); <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (the ALJ's determination that side effects did not present a significant problem was supported by substantial evidence where treating and examining physicians did not disclose concerns about side effects in the record).

Additionally, Plaintiff argues that the evidence is uncontradicted that she was let go from her previous jobs due to difficulties following directions and understanding the job requirements, as well as falling a few times. (T 38-39)  However, the ALJ cited Plaintiff's disability report which indicated that she stopped working because she was laid off.[13] (T 16, 111)  The ALJ also noted that Plaintiff returned to work after sustaining her L2 and pelvic fractures in 2004 and continued to work through some time in 2010. (T 16, 112)

Citing an October 14, 2010, treatment note from Dr. Reiskind, Plaintiff also contends that the record at the alleged onset date of disability documents worsening pain and limping. (T 198-99) But the ALJ explained that there was no reliable evidence that her condition deteriorated around the

---

[13]  In the space available to explain why she stopped working, Plaintiff answered, "THEY LET ME GO." (T 111)

onset date alleged for disability. (T 16)  Other than stating, "She lost her job.  She has trouble looking for work due to her pain and limp[,]" the record identified by Plaintiff is essentially the same as her previous treatment notes: Plaintiff reported her pain was an average of six (6) out of ten (10) and she had diminished sensation and strength, but the medications were controlling her pain well and her coordination, gait, upper extremity joints, lower extremity joints, cervical spines, and L-S spines were normal. (T 198-99)

Plaintiff also contends the ALJ placed undue weight on her receipt of employment benefits during the relevant time period.  The ALJ explained that Plaintiff admitted continuing to look for work and received unemployment benefits for the entirety of the time since she ceased work; the ALJ found it disingenuous for Plaintiff to represent to the Social Security Administration that she was permanently disabled, while holding herself out to the State of Florida as able and willing to work. (T 13, 16, 35-37)  Although the receipt of unemployment benefits, alone, does not disqualify a claimant from consideration for Social Security benefits, an ALJ may consider a claimant's receipt of unemployment compensation as one factor in evaluating a claimant's credibility. See Kalishek v. Astrue, No. 8:10–cv–714–T–23AEP, 2011 WL 4389643, at *5 (M.D. Fla. Aug. 23, 2011) (citations omitted); see also Estelle v. Astrue, No. 2:11–cv–337–FtM–99SPC, 2012 WL 4369296, at *20 (M.D. Fla. July 31, 2012); Boyd v. Astrue, No. 3:10–cv–105–J–JRK, 2011 WL 1259795, at *6-7 (M.D. Fla. Mar. 31, 2011); 20 C.F.R. § 404.1529(c)(3)(vii) (2011) (providing that the ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms").  Here, the ALJ did not err in relying on the inconsistency between receiving unemployment compensation and applying for disability benefits as one factor in evaluating Plaintiff's credibility.

Finally, Plaintiff contends that her activities of daily living fail to establish that she could perform a job requiring light exertional work.  The ALJ noted that Plaintiff reported the ability to cook, vacuum, sweep, mop, and drive, as well as do laundry, light yard work, gardening, and light repairs. (T 16, 119-20, 136)  Further, Plaintiff testified that she drives three times per week, shops, cooks, performs light housework, works in the garden, sorts laundry, and uses the computer for about an hour per day. (T 16, 33-35)

It is true that the ability to engage in everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).  However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

The Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case.  Accordingly, this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)      The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)      The Clerk of Court enter final judgment in favor of Defendant consistent with 42

U.S.C. §§ 405(g) and 1383(c)(3).


**Date: February 19, 2015.**

ELIZABETH A JENKINS
United States Magistrate Judge



## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).


Copies to:

Counsel of Record

District Judge